**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

SARAH MARTIN and JEFFREY S.
MARTIN, w/h, and WILLIAM HEVERLY,
individually and on behalf of all others
similarly situated,

        Plaintiffs,

          v.

FOSTER WHEELER ENERGY
CORPORATION,

        Defendant.

NO. 3:06-CV-0878

(JUDGE CAPUTO)

## <u>MEMORANDUM</u>

Presently before the Court is Plaintiffs' motion for attorneys' fees and costs for Class Counsel. (Doc. 55.)  Also before the Court is a motion for attorneys' fees and costs by the Objector Plaintiffs to the Settlement.  (Doc. 63.)  For the reasons set forth below, the Court will grant in part and deny in part Plaintiffs' motion for Class Counsel's fees and costs.  Class Counsel for Plaintiffs will receive thirty percent (30%) of the Settlement fund, or $480,000.00 in attorneys' fees, and $6,116.81 in costs.  The Court will grant Plaintiffs' request for an award to the Class Representatives.  Sarah Martin will receive $4,000.00, Jeffrey S. Martin will receive $4,000.00, and William Heverly will receive $2,000.00 as an incentive award from the Fund. (Doc. 55.)  Likewise, the Court will deny the Objector Plaintiffs' motion, as the Objector Plaintiffs did not confer a substantial benefit on the class.  (Doc. 63.)

## BACKGROUND

The present motion requests attorneys' fees and costs for Plaintiffs' Class

Counsel. The facts of the case were previously discussed in detail in this Court's Order of December 14, 2007.  (Doc. 62.)  Therefore, only the facts relevant to this motion will be discussed here. The Class Members sued based upon water problems they believed were traceable to amounts of trichloroethylene ("TCE") caused by Defendant in the Class Members' private wells.  The parties conducted settlement negotiations which led to a Settlement presented to the Court on April 16, 2007 as a Joint Motion for Preliminary Approval of Class Action Settlement.  (Doc. 41.)  The Settlement included an agreement by Foster Wheeler to pay one million, six hundred dollars ($1.6 million) to the class for settling and releasing their claims.  (Doc. 41.)  The Settlement also included a forty-thousand dollar ($40,000) Alleged Water-Related Fund for purposes of funding solutions for Class Members with specific water related problems traceable to the abandonment of the Class Members' wells.  (Doc. 41.)   The Court approved this Joint Motion on April 19, 2007.  (Doc. 43.)  Objections to the Settlement  were filed by a group of Objector Plaintiffs on July 23, 2007.  (Doc. 49.)  A Fairness Hearing was held on August 7, 2007. (Doc. 58.)  The Settlement was approved by the Court on December 14, 2007.  (Doc. 62.)

On July 31, 2007, Plaintiffs made this motion for attorneys' fees and costs for Class Counsel, requesting a fee of thirty-three and one-third percent (33 ⅓%) of the Settlement Fund.  (Doc. 55.)  Class Counsel also requested a division of the ten-thousand dollar ($10,000) award to the Class Representatives.  (Doc. 55.)  The Objector Plaintiffs filed a motion for attorneys' fees and costs on December 20, 2007 in the amount of $36,510.47.  (Doc. 63.)  These motions are fully briefed and ripe for disposition.

2

**DISCUSSION**

I.      **Motion for Attorneys' Fees by Plaintiffs for Class Counsel**

"There are two basic methods for calculating attorneys' fees - the percentage-of-recovery method and the lodestar method."  *In re Prudential Ins. America Sales Practice Litig. Agent Actions*, 148 F.3d 283, 333 (3d Cir. 1998).  The percentage-of-recovery method is generally used in cases involving a common fund, and allows courts to award attorneys' fees from the fund based upon a percentage of the plaintiffs' recovery.  *Id.* (citing *In re General Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 821 (3d Cir. 1995)).  In contrast, the lodestar method is more often used in statutory fee-shifting cases.  *Id.*  (citing *In re General Motors*, 55 F.3d at 821.)  The lodestar method may also be used when "the nature of the recovery does not allow the determination of the settlement's value necessary for application of the percentage-of-recovery method."  *Id.*  Although each method is generally applied to certain types of cases, it is recommended that courts use a second method of fee calculation to cross-check the fee calculation.  *Id.*

In this case, the percentage-of-recovery method is the appropriate vehicle for calculating attorneys' fees in light of the common settlement fund.  *Id.* at 333-34; *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n. 1 (3d Cir.2000); *Brytus v. Spang & Co.*, 203 F.3d 238, 243 (3d Cir.2000); *In re General Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 821 (3d Cir.1995).

A.      Percentage-of-Recovery

_____In determining the appropriateness of the fee award in a common fund class action, the Court, in determining the percentage-of-recovery, should consider a list of

non-exclusive factors: (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases. *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n. 1 (3d Cir. 2000) (citing *In re Prudential*, 148 F.3d at 336-40). "These factors need not be applied in any formulaic way. Since each case is unique, certain factors may outweigh others." *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 513 (W.D. Pa. 2003). The Court will consider each of these factors in turn.

      1.    *Size of the Fund and Number of Persons Benefitted*

The size of the Settlement Fund in this case is one-million, six-hundred and forty thousand dollars ($1.64 million). However, Class Counsel does not seek a fee from the forty-thousand dollar ($40,000.00) Alleged Water-Related Fund. Generally, the larger the size of the settlement fund, the smaller the percentage-of-recovery award is for class counsel. *In re Prudential Ins.*, 148 F.3d at 339. In this case, the size of the class and the fund is not particularly large, and therefore there is little danger for an inflated fee based upon a very large class or recovery. *See Erie County Retirees Ass'n v. County of Erie, Pennsylvania*, 192 F. Supp. 2d 369, 379 (W.D. Pa. 2002).

As noted in *Erie*, as the size of the settlement fund decreases, so does the size of each class member's recovery. In this case, Category 1 members would receive approximately four percent (4%) of their assessed property value, an average of $4,800 per parcel, and an additional $20,200 per designated parcel for damages other than

diminution in property value.  Category 2 members would receive approximately four

percent (4%) of their assessed property value, an average of $4,800 per parcel.

Category 3 members would receive approximately two percent (2%) of their assessed

property value, an average of $3,000 per parcel.

Here, a recovery of attorneys' fees of thirty-three and one third percent (33 ⅓%)

would greatly decrease the recovery of the Class Members.  Such a recovery would grant

the Class Counsel over one half-million dollars in fees.  Such a recovery would be

inordinately large, given the recovery of the class and the early settlement of this case.

Overall, this factor weighs heavily against Class Counsel's petition for an

attorneys' fee of thirty-three and one-third percent (33 ⅓%), as the recovery would be

unduly large given the size of the Fund.

    2.    *Substantial Objections*

The Court previously addressed the reaction of the Class to the settlement in its

December 14, 2007 Order.  (Doc. 62.)  At that time, it was noted that out of the

approximately one-hundred and forty-seven (147) parcels that fall within the affected

area, twenty (20) have indicated that they wish to be excluded from the Settlement. (Doc.

62.)  Therefore, approximately 85% has opted in to the settlement, or otherwise

expressed no issues with the settlement.  Of the 85% of the settlement class, four (4)

class members objected to the property valuation, and the other objectors were opposed

to the settlement based on a variety of other reasons.  (Doc. 62.)

The Court-appointed Class Administrator, A.B. Data, Ltd. mailed Notices to class

members.  (Verkhovskaya Aff. ¶¶ 8-12, Doc. 61 Ex. B.)  A.B. Data also provided website

and telephone services to respond to Class Member Inquriies.  (Verkhovskaya Aff. ¶¶ 13-

5

16, Doc. 61 Ex. B.) The Notices advised class members that Class Counsel would seek attorneys' fees of forty percent (40%) and reimbursement for costs, as well as an award for the Class Representatives.  (Doc. 61 Ex. C.)  There have been no objections on the basis of this notice.

At the Fairness Hearing, Mr. David A. Garrison, Esq., on behalf of the Objecting Plaintiffs, stated that the Objecting Plaintiffs objected to the fee petition filed by Class Counsel. (Fairness Hr'g Tr. 255-57, Aug. 7, 2007, Doc. 71.)  However, the Court specifically told the Objecting Plaintiffs that "I'll hear you making an objection.  I'm not going to count this as an objection unless you file a paper because there's - that triggers a briefing requirement under the local rules."  (Fairness Hr'g Tr. 257, Aug. 7, 2007, Doc. 71.)  Mr. Garrison stated that he was authorized to object to the fee petition at the Fairness Hearing. (Fairness Hr'g Tr. 257, Aug. 7, 2007, Doc. 71.)  The Court responded that "[A]uthorized to object to it but maybe not file a brief is going to fail for the lack of a brief.  So, file it. If you're going to file objections to the fee petition, they must be in writing, the objections, and you must follow the local rules as far as the briefing schedule. Let me make that clear."  (Fairness Hr'g Tr. 257, Aug. 7, 2007, Doc. 71.)  The Court noted a third time that "[I]t's of no consequence until you file a document, objection and then file a brief."  (Fairness Hr'g Tr. 257, Aug. 7, 2007, Doc. 71.)  The Court was abundantly clear that to file objections to the fee petition, the Objector Plaintiffs would be required to file a brief.  However, no objections or brief were filed by the Objector Plaintiffs, so the Court notes that they no longer object to the fee petition.

As there have been no substantial objections to the attorneys' fees by Class Counsel, this factor weighs in favor of granting Class Counsel's petition for attorneys'

6

fees.

>   3.    *Skill and Efficiency of Attorneys*

The skill and efficiency of the attorneys is "measured by 'the quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of the counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel.'" *In re Ikon Office Solutions, Inc., Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) (quoting *In re Computron Software, Inc.,* 6 F. Supp. 2d 313, 323 (D.N.J. 1998)). Class Counsel has submitted the affidavit of Mr. Marrone detailing the experience and qualifications of the attorneys working on behalf of the Class Members. (Marrone Aff., Doc. 61 Ex. A.)  The attorneys are well-qualified in the field of complex litigation matters, including class action litigation.  The attorneys for the Class Members also worked diligently to reach a settlement early in the litigation process, therefore avoiding high costs. Therefore, this factor also weighs in favor of approving the fee request.

>   4.    *Complexity and Duration of Litigation*

The complexity and duration of this litigation weigh in favor of granting Class Counsel's request for attorneys' fees of thirty-three and one-third percent (33 ⅓ %).  The Complaint was filed on April 26, 2006.  (Doc.1.)   The Joint Motion for Preliminary Approval of the Class Action was filed approximately one (1) year later, on April 16, 2007. (Doc. 41.)  As noted in the Court's Order approving Settlement, the litigation is complex, expensive, and likely to last a long amount of time.  (Doc. 62.)  This is due to the nature of pollution from TCE.  Furthermore, there are complicated issues of fact and science concerning the source of TCE and its impact on the various Class Members.  Such a

7

claim would require extensive discovery and scientific evidence, requiring the Plaintiffs to prove that the Defendant was the source of the TCE, that Plaintiffs' property was decreased in value, among other liability concerns.  The Court further noted in its December 14, 2007 Order that complicated issues of medical monitoring exist, which is an unsettled area of the law.  (Doc. 62.)  Due to the complexity and potential duration of the case, this factor weighs in favor of the Class Counsel.

     *5.    Risk of Nonpayment*

     The fifth factor considers "the risk of nonpayment" by the defendant.  *Gunter*, 223 F.3d at 195 n.1. Such a risk is high when a defendant is near insolvency. *Id.* at 199. Furthermore, the risk of nonpayment is "acute" where a defendant lacks "significant unencumbered hard assets against which plaintiffs could levy had a judgment been obtained." *Cullen*, 197 F.R.D. at 150.  The chance of bankruptcy or nonpayment by Foster Wheeler is small, and this Court previously held that "[t]here is no doubt Foster Wheeler could withstand a greater judgment."  (Doc. 62.)  Therefore, the risk of nonpayment is quite low in that regard.

     However, Class Counsel undertook this action on a contingent fee basis. Therefore, they "assum[ed] a substantial risk that they might not be compensated for their efforts."  *In re Datatec Sys., Inc. Sec. Litig.*, No. 04-CV-525 (GEB), 2007 WL 4225828, at *7 (D.N.J. Nov. 28, 2007).  The *Datatec* court noted that "'[c]ounsel's contingent fee risk is an important factor in determining the fee award. Success is never guaranteed and counsel faced serious risks since both trial and judicial review are unpredictable.'" *Id.* (quoting *In re Prudential-Bache Energy Income P'ship Sec. Litig.*, No. 888, 1994 WL 202394, at *16 (E.D. La. May 18, 1994)).  Therefore, because Class

Counsel took this case on a contingency basis, the risk of nonpayment favors the granting of the petition to Class Counsel.

      *6.     Amount of Time Devoted to Case by Plaintiffs' Counsel*

      As discussed below in the calculation of the Lodestar, Plaintiffs' Class Counsel billed a total of five-hundred and ninety-nine (599) hours for work done by partners, associates, and paralegals.  As stated in the Court's December 14, 2007 Order, there has been little discovery from what the Court can determine.  (Doc. 62.)  However, there has been an extensive amount of investigation performed by Class Counsel.  As stated in Mr. Marrone's Affidavit, the time spent on the case included initial case fact research and investigation; initial consultation with experts; extensive document review and analysis; research and drafting the Complaint; research and drafting the Motion to Amend Complaint; responding to defendant's opposition to the Motion to Amend Complaint and conducting argument on the Motion before this Court; inquiring with the U.S. Environmental Protection Agency and with the Pennsylvania Department of Environmental Protection on behalf of the Class; attending "town hall" meetings with Class Members; responding to inquiries from Class Members with requests and other advocacy with defendant, the U.S. Environmental Protection Agency, and the Pennsylvania Department of Environmental Protection; and negotiating and implementing the settlement of this action.  (Marrone Aff. Doc 61 Ex. A ¶ 2.)  The time that Class Counsel devoted to this case represents a substantial commitment to this litigation and its Settlement, and this factor weighs in favor of an award of thirty percent (30 %).

      *7.     Awards in Similar Cases*

      The Settlement Fund in this case amounts to one-million, six-hundred and forty

thousand dollars ($1.64 million).  District courts within the Third Circuit have typically

awarded attorneys' fees of 30% to 35% of the recovery, plus expenses, in settlements of

this size. *In re Ravisent Tech., Inc. Sec. Litig.*, No. Civ. A. 00-CV-1014, 2005 WL 906361,

at *11 (E.D. Pa. Apr. 18, 2005) (citing *In re CareSciences, Inc. Sec. Litig.*, Civ. A. No.

01-5266 (E.D. Pa. Oct. 29, 2004) (awarding one-third recovery of $3.3 million settlement

fund, plus expenses); *In re Penn Treaty Am. Corp.*, Civ. A. No. 01-1896 (E.D. Pa. Feb. 5,

2004) (awarding 30% of $2.3 million settlement fund); *In re Corel Corp. Sec. Litig.*, 293 F.

Supp. 2d 484, 495-98 (E.D. Pa. 2003) (awarding one-third of $7 million settlement fund,

plus expenses); *Erie Forge and Steel, Inc. v. Cyprus Minerals Co.,* Civ. Action No. 94-404

(W.D. Pa. 1996) (33.3% fee from $3.6 million recovery)).  *See also Sala v. Nat'l R.R.*

*Passenger Corp.*, 128 F.R.D. 210 (E.D. Pa. 1989) (awarding 33% of the first million

dollars of settlement, plus 30% of the remainder between one and two million dollars of a

$1.79 million fund).  Although an award of thirty percent (30%) to thirty-five (35%) is

warranted in a case this size, the smaller cases of less than $2.5 million generally award

closer to thirty percent (30%).  Therefore, an award of thirty percent (30%) is warranted in

this type of case, where the recovery by the Class is $1.64 million.  _____

_____8.    *Other Factors*

In *Prudential*, the Third Circuit Court of Appeals considered three (3) other factors

that may be relevant to consider in an attorneys' fees case.  First, the Court considered

the value of benefits to class members attributable to Class Counsel as compared to

other groups, such as government agencies conducting investigations.  *In re Prudential*,

148 F.3d at 338.  Second, the court considered the percentage fee that would have been

negotiated had the case been subject to a private contingent fee agreement at the time

counsel was retained.  *Id*. at 340.  Third, the court looked for "innovative" terms of settlement.  *Id*. at 339.  The *Prudential* court held that attorneys' fees in class action cases requires the district court to consider "what class counsel actually did and how it benefitted the class." *Id.* at 342.

To the extent these factors are applicable to this case, they also weigh in favor of a thirty percent (30 %) recovery for Class Counsel.  In this case, the Class Counsel negotiated a contingent fee agreement with Class Representative Sarah Martin for forty percent (40%), which is larger than the percent fee requested.  Furthermore, the Settlement terms have created an Alleged Water-Related Fund for purposes of funding solutions for class members with specific water related problems traceable to the abandonment of the class members' wells.  Such a term is "innovative," as mentioned in *Prudential.*  Thus, the *Prudential* factors further weigh in favor of granting Class Counsel an award of attorneys' fees.

9.    *The Award*

After the balancing of the *Gunter* and *Prudential* factors, the Court finds that Plaintiffs' counsel is entitled to attorneys' fees.  However, the Court will award thirty percent (30%), rather than the requested thirty-three and one-third percent (33 ⅓%). This decision is largely based upon the size of the award ($1.64 million for all class members).  Furthermore, as discussed previously, cases of this size generally award thirty percent (30%) recovery in fees, because the recovery for the Class Members is greatly affected by a large percentage recovery of attorneys' fees.   Because of the modest size of the recovery for the Class Members, a small change in percentage recovery creates a large difference in the amount received by each Class Member.  As

11

the first *Gunter* factor, the size of the award, has great weight in the recovery of this size, the Court will reduce the fees to thirty percent (30%), or $480,000.00.

     B.     Lodestar Methodology

_____In addition to using the percentage-of-recovery calculation, the Third Circuit Court of Appeals has suggested that it is "sensible" for a district court to cross-check the percentage-of-recovery calculation with a lodestar calculation. *In re Prudential*, 148 F.3d at 333. In calculating the lodestar, the "initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended on litigation times a reasonable hourly rate." *Blum v. Stetson*, 465 U.S. 886, 888 (1984).

_____In calculating the reasonable rate, the Court looks to the prevailing market rates in the relevant community. *Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 180 (3d Cir. 2001). The Court should considered the experience and skill of the prevailing party's attorney, and compare the rates to those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation. *Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001). The prevailing party bears the burden of demonstrating that the requested hourly rates are reasonable. *Id.*

     The Court must also determine whether the number of hours spent on the litigation was a reasonable number of hours. The Court "should review the time charged, decide whether the hours claimed were reasonably expended for each for the particular purposes described, and then exclude those that are 'excessive, redundant, or otherwise unnecessary.'" *Public Interest Research Group of N.J., Inc. v. Windall*, 51 F.3d 1179, 1188 (3d Cir. 1995) (citations omitted). Thus, a trial court will "exclude from this initial fee calculation hours that were not reasonably expended on the litigation." *Hensley v.*

*Eckerhart*, 461 U.S. 424, 434 (1983).   Thus, using the lodestar methodology, the Court can cross-check the percentage-of-recovery method for reasonableness.

In Thomas More Marrone's Affidavit in support of the application for attorneys' fees, Mr. Marrone indicated the hourly rate and number of hours worked for each partner, associate, and paralegal for Feldman Shepherd Wohlgelernter Tanner & Weinstock. (Marrone Aff. Doc 61. Ex. A-1.)  Mr. Alan M. Feldman, a partner, billed one and one-half (1.5) hours at a rate of five-hundred and fifty dollars ($550.00) per hour for a total of eight-hundred and twenty-five dollars ($825.00).  Mr. Ezra Wohlgelernter, also a partner, billed six and nine-tenths (6.9) hours, at a rate of five-hundred dollars ($500.00) per hour, for a total of three-thousand, four-hundred and fifty dollars ($3,450.00).  Mr. Danile S. Weinstock, also a partner, billed fifty-six and one-tenth hours (56.1), at a rate of five-hundred dollars per hour, for a total of twenty-eight thousand and fifty dollars ($28,050.00).  Mr. Marrone himself billed one-hundred and fifty-three and eight-tenths hours (153.8) at a rate of five-hundred dollars ($500.00) per hour, for a total of seventy-six thousand, nine-hundred dollars ($76,900.00).  Mr. Thomas W. Grammar, an associate, billed three-hundred twelve and four-tenths hours (312.4) at a rate of three-hundred and thirty-five dollars ($335.00) for a total of one-hundred and four thousand, six-hundred and fifty-four dollars ($104,654.00).  Finally, two paralegals, Mr. Robert S. Hrouda and Ms. Wanda Brown, billed fifty-seven (57) and eleven and three-tenths (11.3) hours respectively, each at a rate of one-hundred and ten dollars ($110.00) per hour.  Mr. Hrouda billed a total of six-thousand, two-hundred and seventy dollars ($6,270.00), and Ms. Brown billed a total of one-thousand, two-hundred and forty-three dollars ($1,243.00).  The work amounted to a total of five-hundred and ninety-nine (599) hours,

13

for a bill of two-hundred, twenty-one thousand, three-hundred and ninety-two dollars ($221,392.00).

Mr. Marrone's affidavit also includes the qualifications and experience of each attorney who worked on this matter.  Based upon the qualifications and experience of these attorneys in complex litigation and class action work, the Court finds that the rates for the partners and associates, which range from three-hundred and thirty-five dollars ($335.00) per hour to five-hundred and fifty ($550.00) per hour is reasonable for a Philadelphia law firm.  Furthermore, the number of hours spent by Class Counsel on this litigation is reasonable, considering the early Settlement of the case.  Therefore, the lodestar is equal to two-hundred, twenty-one thousand, three-hundred and ninety-two dollars ($221,392.00).

The Court must also consider the lodestar multiple in its cross-check of the attorneys' fees.  The lodestar multiplier is calculated by dividing the attorneys' fees that Class Counsel seeks, by the total number of hours Class Counsel expended on litigation multiplied by Class Counsel's hourly rates.  *Cullen*, 197 F.R.D. at 151 n.6.  Lodestar multiples of less than four (4) are well within the range awarded by district courts in the Third Circuit. *See In re Prudential*, 148 F.3d at 341 (holding that lodestar "[m]ultiples ranging from one to four are frequently awarded in common fund cases where the lodestar method is applied").  In this case, the Court's award of thirty percent (30%) Class creates a lodestar multiple of 2.17[1], which is within the acceptable range awarded by

---

[1]  In the Court's calculation, 30 % of $1.6 million is equal to $480,000.00. $480,000.00 divided by $221,392.00 equals 2.17, which is the lodestar multiplier.

district courts in the Third Circuit.  Therefore, the cross-check also supports the award of thirty percent (30%) of the Settlement fund.  As the *Gunter* factors and Lodestar cross-check weigh in favor of granting the Class Counsel's petition for fees, the Court will award thirty percent (30%) of the Settlement fund, or $480,000.00.

##### C.     Costs

Class Counsel has also requested reimbursement of litigation costs in the amount of $6,116.81.  These expenses include, but are not limited to copying, medical records, expert witnesses, transcripts, on-line research, travel, fees to the Environmental Protection Agency, postage and delivery services. A large percentage of these litigation costs are attributable to copying and transportation. These expenses are both proper and reasonable. Therefore, Class Counsel will be awarded reimbursement of these expenses from the Settlement Fund.

##### II.     Award to the Class Representatives

The Class Representatives seek an incentive award of ten-thousand dollars ($10,000).  Class Counsel requests that Mr. Heverly be awarded status as a Class Representative for purpose of the incentive award, as he was added as a Class Representative after the Martins became Objectors to the Settlement.

"Incentive awards are 'not uncommon in class action litigation and particularly where, as here, a common fund has been created for the benefit of the entire class.'" *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 145 (E.D. Pa. 2000) (quoting *In re S. Ohio Corr. Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997)).

Additionally, the Notice mailed to Class Members informed them of the requested incentive awards, and no one has objected.  *See Mehling v. New York Life Ins. Co.*, Civ.

15

A. No. 99-5417, 2008 WL 597725, at *11 (E.D. Pa. Mar. 4, 2008) (noting that there had been no objections to the Class Representatives' incentive award).

Mr. Heverly was added as a Class Representative after the Martins became Objector Plaintiffs.  Since that time, Mr. Heverly was involved in several ways, such as speaking to Class Counsel on the telephone regarding concerns of the Class prior to the need for another Class Representative.  He also talked over the Settlement with Class Counsel, spent time preparing with the hearing with Counsel, and took a day to attend the hearing, ready to testify if necessary.  For his work as an additional Class Representative, Mr. Heverly will be awarded $2,000.00.  The remainder will be divided between Sarah and Jeffrey Martin, for their work as Class Representatives from the inception of the litigation.  Therefore, Plaintiffs' motion for an award to the class representatives will be granted so that Sarah Martin will receive $4,000.00, Jeffrey S. Martin will receive $4,000.00, and William Heverly will receive $2,000.00 as an incentive award from the Fund.  (Doc. 55.)

### III.    Motion for Attorneys' Fees by Objector Plaintiffs

An objector to a class action settlement is generally not entitled to an award of attorneys' fees. *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 520 (W.D. Pa. 2003). However, objectors may recover "'attorneys' fees and expenses if the settlement was improved as a result of their efforts.'" *Id.* (quoting *Spark v. MBNA Corp.*. 289 F. Supp. 2d 510, 513 (D. Del. 2003)).  "Absent a showing that the objector substantially enhanced the benefits to the class under the settlement, the objector is not entitled to a fee." *Id.*

In this case, counsel for Objector Plaintiffs submitted Objections prior to the Fairness Hearing on July 23, 2007.  (Doc. 49.)  The Objections outlined nine (9) potential

issues regarding the proposed Settlement.  Objector Plaintiffs argue that counsel is entitled to attorneys' fees because they raised a number of issues in their Objections which contributed to the Court's analysis of the Settlement, and therefore the Plaintiffs were benefitted.  Objector Plaintiffs specifically note that they objected to the language in the release of liability, which noted that the released claims shall not include claims arising "solely" due to result of exposure to trichloroethylene ("TCE").  The Objector Plaintiffs also raised concerns regarding medical monitoring.

Other district courts have held that attorneys' fees for objectors does not require that an economic benefit to the class occur, or even that the objection influenced the court's decision.  *In re AOL Time Warner ERISA Litig.,* No. 02 CV 8853(SWK), 2007 WL 4225486, *2 (S.D.N.Y. Nov. 28, 2007).  The district court for the Southern District of New York noted that "some courts have rewarded objectors' counsel for advancing non-frivolous arguments and 'transform[ing] the settlement hearing into a truly adversarial proceeding.'"  *Id.*  (quoting *Frankenstein v. McCrory Corp.*, 425 F. Supp. 762, 767 (S.D.N.Y. 1977)).

Although the Objector Plaintiffs did contribute to the Fairness Hearing through their Objections, the Objector Plaintiffs have not shown that they have "substantially enhanced the benefits to the class."  The district courts in the Third Circuit have not adopted a view like that of the Southern District of New York in considering what constitutes a "benefit" to the class.  *See In re Rent-Way*, 305 F. Supp. at 520 (finding that the objectors were not entitled to attorneys' fees when lead counsel's reduction of attorneys' fees were not premised on their objections); *Spark*, 289 F. Supp. 2d at 513.  The *Sparks* court noted that objectors attorneys' fees are unusual.   "[C]ases in which objectors are awarded

attorney's fees are few and far between.  In such cases, the objectors expended large amounts of time, money and resources, aided the court considerably in its consideration of proposed settlement and fee awards, and the class members were ultimately benefitted as a result of the objectors' efforts.  *Spark*, 289 F. Supp. 2d at 514-15 (citing *In re Harnischfeger Indus., Inc. Sec. Litig.*, 212 F.R.D. 400, 413-15 (E.D. Wis. 2002), *In re Horizon/CMS Healthcare Corp. Sec. Litig.*, 3 F. Supp. 2d 1208, 1214 (D.N.M. 1998)).  In *Sparks*, the court noted that the objector had done nothing more than propose an alternative fee scheme.  *Id.*  In this case, the objectors provided several objections, but none of these objections were adopted by the Court.  These objections do not provide the substantial benefit required to overcome the presumption that they are not entitled to attorneys' fees.  *Id.*  Therefore, the Court will deny Objector Plaintiffs' motion for attorneys' fees and costs.  (Doc. 63.)

## CONCLUSION

For the reasons stated above, the Plaintiffs' motion for attorneys' fees and costs for class counsel will be granted in part and denied in part. (Doc. 55.)  Class Counsel for Plaintiffs will receive $480,000.00 in attorneys' fees and $6,116.81 in costs.  Plaintiffs' motion for an award to the Class Representatives will be granted so that Sarah Martin will receive $4,000.00, Jeffrey S. Martin will receive $4,000.00, and William Heverly will receive $2,000.00 as an incentive award from the Fund.  (Doc. 55.)  The motion for attorneys' fees and costs for the Objector Plaintiffs will be denied.  (Doc. 63.)

18

An appropriate Order follows.


March 31, 2008                                            /s/ A. Richard Caputo
Date                                                     A. Richard Caputo
                                                        United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

SARAH MARTIN and JEFFREY S.
MARTIN, w/h, and WILLIAM HEVERLY,
individually and on behalf of all others
similarly situated,

        Plaintiffs,

           v.

FOSTER WHEELER ENERGY
CORPORATION,

        Defendant.

NO. 3:06-CV-0878

(JUDGE CAPUTO)

## <u>ORDER</u>

    **NOW**, this <u>31st</u> day of March, 2008, **IT IS HEREBY ORDERED** that Plaintiffs'
motion for attorneys' fees and costs for Class Counsel (Doc. 55) is **GRANTED IN PART**
and **DENIED IN PART** as follows:

    (1)    Class Counsel for Plaintiffs are granted a fee of 30% from the Settlement
Fund, excluding the Alleged Water-Related Fund, which is calculated as
$480,000.00 from the Settlement Fund.

    (2)    Class Counsel for Plaintiffs are granted $6,116.81 from the Settlement
Fund for costs.

    The motion to grant an award to the Class Representatives (Doc. 55) is
**GRANTED** as follows:

    (1)    Sarah Martin receives $4,000.00 as an incentive award from the Fund.

    (2)    Jeffrey S. Martin receives $4,000.00 as an incentive award from the Fund.

    (3)    William Heverly receives $2,000.00 as an incentive award from the Fund.

The motion for attorneys' fees and costs by the Objector Plaintiffs (Doc. 63) is **DENIED**.

_____                        /s/ A. Richard Caputo_____
                                               A. Richard Caputo
                                               United States District Judge